UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

SADE Y. MORGAN,

       Plaintiff,                          Case No. 13-10023
                                                    Honorable Thomas L. Ludington

v.

J.C. PENNEY COMPANY, INC.,

       Defendant.

_____/

**OPINION AND ORDER DENYING MOTION FOR RECONSIDERATION**

Sade Morgan (Morgan) used to work for J.C. Penney Company, Inc. (JCPenney), but she was fired in December 2011 after she allegedly stole store merchandise. Morgan subsequently filed a lawsuit against JCPenney alleging that she was not fired for theft, but instead because she suffers from a mental disability. However, because Morgan did not demonstrate that the ultimate decision-maker knew, or had reason to know, of her alleged disability, her complaint was dismissed. *See* Mar. 31, 2014 Op. & Order, ECF No. 30.

On April 14, 2014, Morgan filed a motion for reconsideration of the Court's Opinion and Order granting JCPenney's motion for summary judgment and dismissing her claims. According to Morgan, the Court's decision was based upon two palpable errors (one factual and one legal): (1) "Kevin Patnode was not the [ultimate] decision-maker[,]" and (2) "federal anti-discrimination law allows for a cat's paw theory to impute discriminatory intent upon an employer." Pl.'s Mot. 2, ECF No. 32. Because both of Morgan's arguments are misplaced, her motion for reconsideration will be denied.

**I**

Morgan brings her motion for reconsideration pursuant to Local Rule 7.1. The Rule allows a party to bring a motion for rehearing or reconsideration "within 14 days after the entry of the judgment or order." E.D. Mich. LR 7.1(h)(1). To succeed, such a motion must demonstrate not only "a palpable defect by which the court and the parties . . . have been misled," but also "that correcting the defect will result in a different disposition of the case." E.D. Mich. LR 7.1(h)(3). "[M]otions for rehearing or reconsideration that merely present the same issues ruled upon by the court, either expressly or by reasonable implication," will not be granted. *Id*.

**II**

The facts underlying Morgan's claims were previously outlined at length and will not be repeated here. *See* Mar. 31, 2014 Op. & Order 1–8. Thus, only the facts necessary to this Court's decision will be provided.

Morgan argues that there are two reasons to grant her motion for reconsideration: first, she argues that Kevin Patnode was not the decision-maker responsible for her termination and the Court's contrary conclusion was palpable error; second, Morgan claims that although the real decision-maker here (JCPenney corporate) had no knowledge of her disability, Mr. Patnode's knowledge (and that of another employee) can be imputed to JCPenney corporate through the cat's paw theory of liability. Morgan is incorrect, however, on both scores.

**A**

In the March 31, 2014 Opinion & Order, the Court concluded that Kevin Patnode "was the sole decision-maker responsible for the termination of Morgan's employment." *Id*. at 12. That factual determination was based on the following evidence: Mr. Patnode's affidavit, in

which he stated, "I terminated Morgan for violation of sales procedures," Patnode Aff. ¶ 5, *attached as* Def.'s Mot. Summ. J. Ex. G, ECF No. 21; the incident report authored by JCPenney's loss prevention officer, in which the loss prevention officer indicated that "Patnode concluded Grant and Morgan would be terminated[,]" Incident Report 3, *attached as* Def.'s Mot. Summ. J. Ex. F; and the e-mail from JCPenney corporate to Mr. Patnode, in which an HR Specialist provided a "recommendation" to Mr. Patnode that Morgan's employment be terminated along with "termination language" for his use, Pl.'s Resp. Summ. J. Ex. 14 ("In partnering with Legal, the recommendation is termination of employment of both associates for violation of company sales procedures. The termination language you can use is listed below").

Morgan seizes the language Mr. Patnode utilized in his original email to JCPenney corporate, in which he expressed his opinion that Morgan should be terminated, as proof that he was not the sole decision-maker here. *See* Pl.'s Resp. Ex. 13 ("I am recommending termination of Morgan without question"). Morgan reasons that because he made a recommendation to JCPenney corporate, Mr. Patnode could not have made the final decision concerning her employment.

But the responsive e-mail Mr. Patnode received includes the same language—JCPenney corporate, after consulting with legal, *recommending* that Morgan's employment be terminated: "In partnering with Legal, the recommendation is termination of employment of both associates for violation of company sales procedures." Pl.'s Resp. Summ. J. Ex. 14. So even by Morgan's logic—where receiving a recommendation makes one the final decision-maker—Mr. Patnode was the final decision-maker here: he recommended that Morgan be terminated to JCPenney corporate, and JCPenney corporate then relayed its recommendation back to him.

Moreover, JCPenney corporate provided more than just its recommendation; it also provided termination language for Mr. Patnode's use: "The termination language you can use is listed below[.]"  *Id*.  If Mr. Patnode was not the person responsible for terminating Morgan's employment, why was JCPenney corporate making recommendations to him, and why would it then provide him with possible language for effectuating those terminations?

Morgan provided no evidence—aside from Mr. Patnode's use of the word "recommending"—to demonstrate that anyone else was responsible for the decision to terminate her employment.  And that argument is undermined by the e-mail Mr. Patnode received from JCPenney corporate.  The facts support this Court's conclusion that Mr. Patnode was the decision-maker responsible for terminating Morgan's employment.  *See* Patnode Aff. ¶ 5; Incident Report 3.  Thus, the Court's conclusion that Mr. Patnode was the final decision-maker did not result from a palpable defect that must be remedied.

**B**

After concluding that Mr. Patnode was not the decision-maker in this case, a proposition that is not supported by any evidence, Morgan argues that "[t]he ultimate decision maker was legal department employee(s) at JCP Corporate who terminated [Morgan]."  Pl.'s Mot. 2 (citing Pl.'s Resp. Summ. J. Ex. 14).  Despite the lack of any evidence, Morgan soldiers on to acknowledge that "[i]t is likely . . . that JCP Corporate did not have knowledge of [her] disability[,]" but nevertheless, "a second legal basis has emerged . . . to allow those discriminated against to tear down self-serving Chinese Walls to impose liability for illegal actions of lower level employees who leave the decision-maker in the dark about unlawful bases to terminate."  *Id*. at 3.  As Morgan indicates, "[t]his theory has become known as the 'cat's paw' theory."  *Id*.

Even if JCPenney corporate was the decision-maker here, to employ the cat's paw theory, Morgan must demonstrate that "a supervisor perform[ed] an act motivated by discriminatory animus that is *intended* by the supervisor to cause an adverse employment action . . . ." *Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 351 (6th Cir. 2012) (citation and brackets omitted) (emphasis in original). At the time her employment was terminated, and for much of her career with JCPenney, Morgan's supervisor was Mr. Patnode. Although he clearly intended that Morgan be fired, there is no evidence whatsoever that Mr. Patnode harbored discriminatory animus against Morgan. Indeed, as the Court noted in its March 31, 2014 Opinion & Order, the record belies any claim that Mr. Patnode was even aware of Morgan's alleged disability. Mar. 31, 2014 Op. & Order 12–15. Mr. Patnode simply had no knowledge to impute to JCPenney corporate, even if he was not the final decision-maker.

Morgan also claims that JCPenney's loss prevention officer, Ken Bolinger, knew of her alleged disability. But as the Court indicated in the March 31 Opinion & Order, all Morgan told Mr. Bolinger was that she "could not write well and had trouble with math." Morgan Aff. ¶ 5, *attached as* Pl.'s Resp. Summ. J. Ex 18. Morgan does not claim she ever indicated to Mr. Bolinger—or to anyone else, for that matter—that she was mentally disabled.

And simply communicating the symptoms of one's disability, such as trouble with writing and math, does not correspond with having communicated the existence of the disability itself. *See Hammon v. DHL Airways. Inc.*, 165 F.3d 441, 450 (6th Cir. 1999) (although employer knew of plaintiff's emotional problems, employer was not charged with knowledge of underlying disability because the plaintiff "never suggested that his emotional problems stemmed from a condition of disability."). Morgan never communicated to Mr. Bolinger that her academic difficulties resulted from a disability, and thus Mr. Bolinger had no knowledge of the

disability to impute to JCPenney corporate even if it was the final decision-maker in this case. The cat's paw theory of liability simply is not relevant to Morgan's claims, and her motion for reconsideration will be denied on this ground as well.

## III

Accordingly, it is **ORDERED** that Morgan's motion for reconsideration, ECF No. 32, is **DENIED**.

Dated: May 7, 2014                                              s/Thomas L. Ludington
                                                                THOMAS L. LUDINGTON
                                                                United States District Judge

---

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on May 7, 2014.

s/Tracy A. Jacobs
TRACY A. JACOBS

---